IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| L.K.L., JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-cv-424-WHA |
| | ) | [WO] |
| EDWARD ELLINGTON, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Petitioner L.K.L., Jr. ("L.K.L."), an inmate with the Alabama Department of Corrections, filed this petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, challenging his conviction in the Circuit Court for Pike County, Alabama, for sexual abuse in the first degree. Doc. 1. For the following reasons, the court recommends that the petition be denied and the case dismissed.

### I. STATE-COURT PROCEEDINGS

A jury convicted L.K.L. of first degree sexual abuse of his minor daughter, A.L., in violation of Alabama law in the case styled as *L.K.L. v. State*, No. 13–1294 (Ala. Ct. Crim. App. 2015). Doc. 7-6 at 1. He was sentenced to ten years in prison. Doc. 7-6 at 1.

L.K.L. appealed, raising two issues. First, he argued that the circuit court erred in refusing to allow defense counsel to cross-examine the victim about out-of-court statements she made in a video recording at the Pike County Child Advocacy Center ("CAC"). Docs. 7-5 & 7-6 at 5. The Court of Criminal Appeals held that, under the

circumstances before it, the circuit court's refusal to allow the defense to show the CAC video to the jury did not deprive L.K.L. of an opportunity to impeach the credibility of the victim. Doc. 7-6 at 14.  Second, L.K.L. argued that the circuit court erred by reinstructing the jury on the use of common sense and by adding commentary to the pattern jury instructions, thereby modifying the Alabama Pattern Instructions and rendering the trial fundamentally unfair. Docs. 7-5 at 24 & 7-6 at 14.  The Court of Criminal Appeals held that there was no indication of prejudice or abuse of discretion inherent in the trial judge's comments, and L.K.L. made only "a bare allegation that the instructions were error without arguing how these instructions prejudiced him in any way." Doc. 7-6 at 16.

The Court of Criminal Appeals denied L.K.L.'s application for rehearing. Docs. 7-7 & 7-8.  The Alabama Supreme Court denied further review.  A certificate of judgment issued on September 11, 2015. Docs. 7-9, 7-10 & 7-11.

## II. HABEAS PETITION AND RESPONDENTS' ARGUMENTS

L.K.L. raises the same claims for § 2254 relief that he raised in his direct appeal. *See* Docs. 1, 7-5 & 7-9.  First, he argues that the trial court erred in refusing to allow the defense to use the victim's statements during the CAC video to impeach her testimony.  He argues that this decision violated his right under the Sixth Amendment to the United States Constitution to confront the witnesses against him. Doc. 1 at 17–21 & 28–34.  He argues the state court's actions prejudiced his case to such a degree that he is entitled to a new trial. Doc. 1 at 19.  Second, he argues "the trial court erred in re-instructing the jury and therein adding additional commentary to the pattern jury instructions." Doc. 1 at 22.  He

argues that this prejudiced him and impaired his right to a fair and impartial trial. Doc. 1 at 22–24.

Respondents admit that the petition is timely. Doc. 7 at 3.  On L.K.L.'s first claim, they argue that his challenge to the exclusion of the videotaped CAC interview under the Alabama Rules of Evidence is not actually a federal claim but rather a challenge to application of state evidentiary rules cloaked as a federal constitutional claim. Doc. 7 at 6. They argue that state evidentiary rulings can be the basis of § 2254 relief only when "the error was of such magnitude as to deny the petitioner his right to a fair trial[.]" Doc. 7 at 6 (citing *Alderman v. Zant*, 22 F.3d 1541, 1555 (11th Cir. 1994)).  They argue that the exclusion of the evidence did not render L.K.L.'s trial fundamentally unfair. Doc. 7 at 7. Respondents further argue that the Court of Criminal Appeals applied Alabama law in determining the circuit court did not err in excluding the evidence. Doc. 7 at 7–8.  They argue L.K.L. does not show that the state-court decision was contrary to Supreme Court precedent or was an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(1)–(2). Doc. 7 at 9.

Second, they argue that L.K.L.'s claim challenging the jury instructions also is not a true federal claim but rather an issue of state law governing jury instructions. Doc. 7 at 10.  They argue L.K.L. did not claim a federal constitutional violation when he objected to the jury instructions in state court and that simply citing a federal case or making passing reference to various amendments to the Constitution does not fairly present a federal issue to the state court. Doc. 7 at 11–12. Therefore, they argue, L.K.L. did not fairly present a federal issue in state court, which must be clear enough for a "reasonable reader [to]

understand each claim's particular legal basis and specific factual foundation." Doc. 7 at 12 (quoting *Hunt v. Comm'r, Ala. Dep't of Corr.*, 666 F.3d 708, 730 (11th Cir. 2012)).  As for the alleged jury instruction error, Respondents maintain that a due process error does not occur "unless an erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair." *Id.* at 10 (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1545 (11th Cir. 1997)).

This court entered an order providing L.K.L. an opportunity to respond to the answer and advising L.K.L. of the constraints that 28 U.S.C. § 2254(d) places on federal courts to grant relief, including procedural default of federal claims, as well as the ways to overcome default. Doc. 8.

L.K.L. responded. Doc. 11.  He argues that the denial of his constitutional right to cross examine his accuser and impeach a witness prejudiced him "to such a degree as to cause a denial of his rights to due process and precluded [him] from receiving a fair and impartial trial." Doc. 11 at 2.  L.K.L. insists he is not "couching an evidentiary ruling under a constitutional right." Doc. 11 at 5.  He argues that the rules of evidence are "simply methods by which the defendant can protect and enforce his Sixth Amendment right to confrontation." Doc. 11 at 6.  He argues that if he procedurally defaulted on his claim, he can avoid the default based on a miscarriage of justice because "[n]othing could be more unjust and support a fundamental miscarriage of justice than the denial of a defendant's right to confront witness against him." Doc. 11 at 6.

After reviewing the § 2254 petition, Respondents' answer, L.K.L.'s response, the state-court record, and applicable federal law, the court concludes that no evidentiary

hearing is required and that the petition is due to be denied in accordance with the provisions of Rule 8(a), Rules Governing Section 2254 Cases in United States District Courts.

### III. APPLICABLE STANDARDS

**A.      Exhaustion and Default Principles**

The procedural default doctrine is closely related to the exhaustion requirement in § 2254 cases.  To preserve a federal claim for habeas review, principles of exhaustion require a petitioner to present the federal claim and facts supporting it to the state's highest court, either on direct appeal or on collateral appeal through postconviction proceedings. *See Pruitt v. Jones*, 348 F.3d 1355, 1358–59 (11th Cir. 2003) (holding exhaustion principles apply to state postconviction proceedings as well as direct appeal).  A petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Pruitt*, 348 F.3d at 1359. In Alabama, this requires filing an appeal to the Court of Criminal Appeals, an application for rehearing, and a petition for discretionary review with the Alabama Supreme Court. *See Pruitt*, 348 F.3d at 1359 (describing Alabama procedures for discretionary review); *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001) ("Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule.").  Doing so gives the state courts the first opportunity to apply controlling law to their case and petitioner's claim. *See Duncan v. Walker*, 533 U.S. 167, 179 (2001).

Federal habeas review also is unavailable if the state-court decision was made on a state-law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The court "presume[s] that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Coleman*, 501 U.S. at 735 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983)). In the rest of the cases, however, the court makes no such presumption. *Coleman*, 501 U.S. at 739.

If the last reasoned opinion "fairly appear[s] to rest primarily upon federal law," then the court presumes the subsequent order relies on federal law. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (citation omitted). Similarly, if the last reasoned order invoked procedural default, then the court "presume[s] that a later decision rejecting the claim did not silently disregard that bar and consider the merits." *Id.* The court presumes a subsequent, unexplained state-court decision adopted the reasoning of the prior decision, but the State may rebut the presumption. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

If a state court plainly holds that a claim is barred under an adequate and independent state-law ground, then this federal court may not review the claim even if the state court alternatively rejected the federal claim on the merits. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (holding that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding" when the adequate and independent state ground "is a sufficient basis for the state court's judgment"); *see Ford v. Georgia*, 498 U.S. 411,

423–24 (1991) (holding that state procedural default is not an "independent and adequate state ground" barring subsequent federal review unless the state rule was "'firmly established and regularly followed'" at the time it was applied); *Ward v. Hall*, 592 F.3d 1144, 1156–57 (11th Cir. 2010) (holding that a state court's procedural bar can preclude federal review if three conditions are met).

If a petitioner did not present a claim to the highest state court but would now be unable to present the claim in state court because of a state procedural rule, that petitioner "meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman*, 501 U.S. at 732. But the petitioner has "procedurally defaulted" the federal claim under an adequate and independent state rule such as the timely filing requirements. *See id.* at 750; *see also Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) (holding that where state-court remedies are no longer available because petitioner failed to present claim on direct appeal or in state postconviction action, petitioner has procedurally defaulted claims and is generally barred from asserting claims in a federal habeas proceeding).

This court may reach the merits of procedurally defaulted claims in two instances:

First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *[Wainwright v.] Sykes*, 433 U.S. [72], 87 [(1977)]. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Id.*; *Crawford v. Head*, 311 F.3d 1288, 1327–28 (11th Cir. 2002). Second, a federal court may also grant a habeas petition on a procedurally defaulted

claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495–96. A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *Id.*

*Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003); *see also Coleman*, 501 U.S. at 750.

## B.   Review on the Merits

For claims properly before a federal court, a writ of habeas corpus shall be granted only if the prior adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). A state-court decision is "contrary to" federal law under § 2254(d)(1) "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell*, 535 U.S. at 694. Under the "unreasonable application" standard, this court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way. *See Williams v. Taylor*, 529 U.S. 362, 411–13 (2000) (O'Connor, J., delivering the opinion of the Court

8

with respect to Part II).  The applicable court is the United States Supreme Court, not lower courts. *Renico v. Lett*, 559 U.S. 766, 779 (2010).  "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Lockyer v. Andrade*, 538 U.S. 63, 76 (2003).  The reviewing court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  The Supreme Court recently reemphasized this deferential standard, holding that "[t]he state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citation omitted). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

As for the unreasonable-determination-of-facts prong under § 2254(d)(2), the federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (citation omitted).  "If [r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Id.*

(quotation marks and citations omitted).  Factual issues made by a state court are presumed correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  The Supreme Court has recognized there is a question about the relationship between § 2254(d)(2)'s "unreasonable determination of the facts" standard and § 2254(e)(1)'s presumption, but it has "not yet defined the precise relationship between [them.]" *Brumfield*, 135 S. Ct. at 2282 (quotation marks and citation omitted).  If a petitioner failed to develop the factual basis of a claim in state court, the federal court cannot hold an evidentiary hearing unless the petitioner shows "the claim relies on . . . a new rule of constitutional law, made retroactive . . . ; or . . . a factual predicate that could not have been previously discovered through the exercise of due diligence; and . . . the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2). "Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief." *Cullen*, 563 U.S. at 185.

Except for certain kinds of error that require automatic reversal, even when a state petitioner's federal rights are violated "relief is appropriate only if the prosecution cannot demonstrate harmlessness." *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015); *see also Glebe v. Frost*, 135 S. Ct. 429, 430–31 (2014) ("Only the rare type of error—in general, one that infect[s] the entire trial process and necessarily render[s] [it] fundamentally unfair—requires automatic reversal.") (quotation marks omitted and alterations in original). "Harmlessness" in the context of section 2254 means "the federal court has grave doubt

about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *Davis*, 135 S. Ct. at 2197–98 (quotation marks omitted). These strict limitations reflect that habeas relief is granted sparingly, reserved for "extreme malfunctions in the state criminal justice systems" and "not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quotation marks omitted).   Within this disciplined framework, the court now addresses L.K.L.'s claims.

## IV. DISCUSSION

### A.    Right of Confrontation

The Sixth Amendment, applied to the states by the Fourteenth Amendment, provides that "[i]n all prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.   Confrontation Clause cases generally fall into two broad categories—those involving out-of-court statements by a witness who a defendant cannot "confront," and those involving restrictions on cross-examination. *See Kentucky v. Stincer*, 482 U.S. 730, 737–38 (1987).   L.K.L.'s claim falls into the second category.

Cross-examination, including the opportunity to impeach testimony, "is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974); *Douglas v. Alabama*, 380 U.S. 415, 418 (1965).   "Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness." *Davis*, 415 U.S. at 316.

11

Nevertheless, the Confrontation Clause guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Stincer*, 482 U.S. at 739 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).

In L.K.L.'s case, A.L.'s mother testified about out-of-court statements that A.L. made to her. Doc. 7-3 at 156–200 (under seal). A.L. also testified at trial. Doc. 7-6 at 2. During the cross-examination of A.L., defense counsel attempted to ask A.L. about statements A.L. made during the interview at the CAC. Doc. 7-6 at 5. Defense counsel argued that the prosecution, through the mother's testimony, introduced A.L.'s out-of-court statements. Doc. 7-6 at 10–11.

The trial court ruled that because A.L.'s statements during the CAC interview were hearsay, and the prosecution had not introduced the interview, counsel could introduce only those portions of the interview where A.L. made an inconsistent statement, not the entire interview. Doc. 7-6 at 6–11. Because it is helpful for the review of the issue, this court, like the Court of Criminal Appeals, quotes at length from the cross-examination of the victim, A.L.:

>"[Defense Counsel:] And you did an interview with Mona Watson; is that right?
>
>"[A.L.:] Yes.
>
>"[Defense Counsel:] Now, during that interview, you discussed these naps with Ms. Watson; is that right?
>
>"THE COURT: Stop. Counsel approach. I thought we've covered this ground before.

"[Defense Counsel]: I'm sorry, Judge?

''THE COURT: I thought we covered this ground before. Whatever she told her is not admissible unless you can show a specific statement that would be inconsistent. You've given no notice of your intent to use this. She's more than twelve years of age at the time of this proceeding. This is hearsay. And we've got orders in place addressing all of this.

"[Defense Counsel]: Judge, apparently when we discussed this in our pretrial hearing, my understanding was I would be allowed to use the video if she made an inconsistent statement.

"THE COURT: You would.

"[Defense counsel]: I can rephrase the question.

"THE COURT: Okay. All right.''

(R. 121–122.)

Following this exchange, defense counsel continued with his cross-examination of A.L. until the following occurred:

"[Defense counsel]: Did you change a journal? You had a journal where you said, 'I miss my dad and my granddad,' and then you went back and changed it?

''[A.L.]: I never had a journal like that.

"[Defense counsel]: Judge, at this time I'd like to refresh the witness' recollection by using the video.

". . . .

"THE COURT: Now, what you're telling me is you want to refresh her recollection. The proper way to do that is to show her, not the jury— okay? You show her what it is you want her to see and ask her does that refresh her recollection.

"But you don't air it in front of the jury. And don't make declarations like that aloud again.

"[Defense counsel]: I apologize, Judge.

13

''THE COURT: And if it does refresh her recollection, then it would have served the purpose. Otherwise, it would be a matter of past recollection recorded. But show her what it is you want her to see to see if it refreshes her recollection. But if what you're gearing toward is playing that whole tape, it ain't going to happen unless the State stipulates that it comes in.

"[Defense counsel]: Yes, sir. And, Judge, while we're at this point and we don't have the jury here if I can go ahead and make an argument to the admissibility at this time. I understand the Court's rulings. However—

"THE COURT: Certainly you should have that chance on behalf of your client. Go ahead.

"[Defense counsel]: However, the State having admitted out of court statements through a prior witness in this case—

"THE COURT: No, they really didn't. They didn't get into the substance of any statements. I cut them off before they could do that. But—here, again, I'm cutting you off before you even get to complete your argument. Make it.

"[Defense counsel]: Judge, we would just argue under *Hubbard v. State*—

''[THE COURT: Well, let me finish this. That would not render a CAC [Child Advocacy Center] interview admissible.

"Here's the deal. You know, the door swung wide open in that other trial. And I surmised that was a matter of strategy on behalf of both sides. I think both sides wanted evidence that would not otherwise be admissible be admitted.

"Until the State gives me some indication they want that in, fine. The only thing you could ever use that for, if she testifies to 'X' here and there's evidence of a prior inconsistent statement, you could use that wherever it occurred. Okay? But that doesn't render the whole CAC interview admissible.

"[Defense counsel]: At that time, Judge, I would not disagree with you—at that time. But I would again—

14

"THE COURT: But, so far, you haven't proven that there is a prior [in]consistent statement. So go ahead and finish your argument. I will not interrupt you a second time—third time.

"[Defense counsel]: I apologize. I lost my place in my notes.

"Judge, what we would argue with the Court is—or we would respectfully disagree that the Court did not and has not timely cut them off from b[ring]ing in out-of-court statements through a secondary witness.

"Under *Hubbard v. State*, 471 So. 2d 497 at 499, it's 1984—it quotes *Brown v. State*, 392 So. 2d 248 at 260—states that a party who has brought out evidence on a certain subject has no valid complaint as to the trial Court's action in allowing his opponent or adversary to introduce evidence on that same subject.

"THE COURT: I understand. Had the State introduced evidence out of that CAC interview, I'd have let you put the whole thing in under the Doctrine of Completeness, or whatever.

"The State hasn't made any reference to that CAC interview other than the fact that it occurred.

"[Defense counsel]: As relates to the interview, I would not disagree with the Court. But the State has not—the State has put in out-of-court statements that are made within the CAC video and interview because she makes the same statements in the CAC video that she made to her mom.

"'THE COURT: Well, not within the context of it occurring there.

"[Defense counsel]: We would respectfully disagree with the Court's finding on that. But I would ask to refresh her recollection as to this question we're asking because she distinctly says in the interview, 'I had an old journal and I started a new journal.'

"THE COURT: Well, show it to her and see if it refreshes her recollection. And if it serves that purpose, then she can indicate so to the jury and then correct her testimony.

"[Defense counsel]: And so as not to do anything else improper, Judge, there are several other inconsistencies with what she said in the

> CAC and what she's testified to. My position being I don't want to have
> to say, Judge—do I need to approach and say, 'Judge, I need to show her
> this again?' I don't want to create a mistrial or any—
>
> "THE COURT: Let's go with the first point first. Go ahead.
>
> "Let me ask you this. And I'm still in last week. I've looked at so
> many documents.
>
> "Is there a transcription of the CAC interview.
>
> "[Prosecutor:] No, sir. Not to the best of my knowledge, no, sir.
>
> "[Defense counsel]: We had asked for it initially the first time. I had
> intended to have one done. But when we got to it this time, I didn't have
> enough time.
>
> "THE COURT: No, you weren't obligated to do that."

(R. 125–131.)

Doc. 7-6 at 5–10 (quoting the trial transcript).  Defense counsel then played the video for

the witness outside the presence of the jury, and the witness indicated it refreshed her

recollection. Doc. 7-6.  Counsel then continued the cross-examination.  He asked A.L.

about the journals she kept, and A.L. provided answers to the questions. Doc. 7-6.  After

the close of the State's case, the court asked defense counsel if the defense intended to

present evidence.  Counsel replied:

> "Yes, Judge. And I'm going to need a few minutes to see which of my
> witnesses are here.
>
> "But also before we go off the record, very briefly if I could, I would
> renew my motion to admit the CAC video based on the same arguments
> now that the State has closed its case.
>
> "THE COURT: Let me ask you this. I want you to clearly state for the
> record why you believe it's admissible.

"[Defense Counsel]: Under the case law, essentially, Judge, our arguments are this: They have offered through the mother out-of-court statements that she allegedly made. The statements in the CAC video are clearly inconsistent with the statements that the State has offered. My argument is I can't be precluded from—

"THE COURT: The mother was not interviewed. You're mixing apples and oranges. Sure, you could offer—if the mother had been interviewed by CAC and she made a prior inconsistent statement, you could offer it.

"[Defense counsel]: I'm not offering her inconsistent statement. I'm saying she made statements to Momma. The mother testified that she made out-of-court statements. She has made completely inconsistent statements in the CAC video. And her testimony today is clearly inconsistent with the entire CAC video. There are parts that are in that video that she has not said a word about. There are parts in here that are different from what she said in court here today. It's completely—

"THE COURT: If you can show me a prior inconsistent statement that this child made in that CAC interview, you can introduce it. And really, what you're talking about is the Doctrine of Completeness.

"And everybody—even those skilled and capable lawyers that I had in that prior trial—believed that the Doctrine of Completeness means that if one thing comes in, the whole things comes in. That rule doesn't say that. Read your rule of evidence.

"The rule of evidence says, 'So much of it as in fairness ought to be allowed.' That's what the rule—there's a limitation, 'So much as in fairness.'

"That means to me evidence of a prior inconsistent statement, not the whole interview. You cannot cite me to a body of law that tells me that whole interview is admissible. The only way it's admissible is if we do it like we did it downstairs, and nobody objects then the whole thing is. But we had pretrial ruling that address this. That's why I'm hammering on it so hard.

''Now, if you've got evidence of a prior inconsistent statement, you can offer it as part of your defense. But that's all I'm going to let you play. And I've not denied you that right. I'm just not going to let you play it in its entirety unless the State says, 'Okay, Judge, we don't object.'

"[Defense counsel]: Yes, sir. Can I [have a moment to try to] find my witnesses. And, obviously, I'd have to find those sections that I would ask to be allowed to be playing during the defense case in chief, which will take me a few minutes.

"THE COURT: We're not going to do like we did a while ago when the jury wasn't in here. You're going to have to cue it up right to the point where you show evidence of a prior inconsistent statement.

''And I would want you to make an offer of proof to me before we actually play it for the jury as to what it's going to show so that I can determine whether, in fact, it would be a prior inconsistent statement."

(R. 141–144.)

Doc. 7-6 at 10–12.  The only evidence the defense identified from the CAC interview concerned A.L.'s journals.  The defense did not identify or create a record on other portions of the interview it wished to present. Doc. 7-6 at 1.

The Court of Criminal Appeals affirmed the decision of the circuit court.  It held that, under Alabama evidentiary rules, "defense counsel could properly cross-examine A.L. concerning any prior inconsistent statements she made in the CAC video and could properly introduce those parts of the CAC video that reflected those statements." Doc. 7-6 at 13.  It went on to state, however, that L.K.L. provided no instances of inconsistent statements other than the journals, and he was allowed to cross-examine A.L. about the journals. Doc. 7-6 at 14.  By failing to make an offer of proof or give A.L. an opportunity to admit or deny the statement, "the defense did not establish a sufficient predicate to present extrinsic evidence through the CAC video about any alleged prior inconsistent statements the victim had made." Doc. 7-6 at 14 (citing Ala. R. Evid. 613(b)).

Consequently, it held, the trial court's refusal to allow the defense to introduce the CAC video into evidence did not deprive L.K.L. of the opportunity to impeach A.L.'s credibility.

This court determines that the state court's ruling was not contrary to, or an unreasonable application of, Supreme Court precedent regarding L.K.L.'s right to cross-examine his accuser. The trial court did not refuse to allow the defense to cross-examine A.L. regarding the prior inconsistent statements but instead limited the evidence before the jury to relevant, prior inconsistent statements. The court sufficiently safeguarded L.K.L.'s opportunity to confront and test the credibility and reliability of the witness while maintaining discretion to prevent repetitive or harassing questioning. *See Stincer*, 482 U.S. at 739; *Davis*, 415 U.S. at 316. L.K.L. argues that under the Alabama Rules of Evidence the defense should not have been forced to disclose the specific evidence it planned to use to impeach the witness. Doc. 1 at 18 (citing Ala. R. Evid. 613). But errors of state evidentiary law generally are not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (holding that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). For these reasons, L.K.L.'s confrontation clause claim does not warrant § 2254 relief. Assuming L.K.L. preserved a due process claim that the evidentiary ruling rendered his trial fundamentally unfair, he does not show that the state court's decision was contrary to, or an unreasonable application of, Supreme Court precedent.[1] *Id.* at 71–72 (holding that

---

[1] L.K.L.'s conclusory argument that he suffered a miscarriage of justice sufficient to overcome procedural default of a federal claim fails because it does not meet the extraordinary circumstances required to establish it. *See Henderson*, 353 F.3d at 892.

errors of state law are grounds for relief only when they render the process fundamentally unfair).

**B.     Jury Instructions**

L.K.L. argues "the trial court erred in re-instructing the jury and therein adding commentary to the pattern jury instructions." Doc. 1 at 22.  He argues the trial court's action prejudiced him and impaired his right to a fair and impartial trial. Doc. 1 at 22–24.

The jury asked two questions during their deliberations. Doc. 7-6 at 14. First, they asked the court to explain the application of the use of common sense. Doc. 7-6 at 14–15; Doc. 7-4 at 99 (sealed). The court recharged the jury, explaining that the jury is to decide what the true facts are based on the evidence and reach a fair decision on whether the State established beyond a reasonable doubt all of the elements of the offense charged against the defendant, and that jurors are allowed to use their "common sense in resolving whatever questions and differences you may have among yourselves." Doc. 7-4 at 100–01 (sealed). Second, the jury asked the court "if there was a different category for touch and penetration." Docs. 7-4 at 102 & 7-6 at 15. The court said that "penetration" was not an element of the charged offense. Doc. 7-4 at 102. The court said "[it] could include penetration, but it's not an element of the charged offense. So listen carefully to what I have to say." Doc. 7-4 at 102. The court then reinstructed the jury on the elements of the offense charged. Docs. 7-4 at 102 & 7-6 at 15. The court reinstructed on the definition of "sexual contact" be explaining that "[s]exual contact, ladies and gentlemen, means—and understand this addresses your question about penetration. Sexual contact means . . . ."

Doc. 7-4 at 103. After reinstructing the jury on the elements, the parties then approached

the bench, and defense counsel stated:

> "Judge, the defense has no objection to the Court's recharge on the issue
> of the use of common sense. We do object to any direction or statements the
> Court has made outside of just absolutely reading the charge or saying this
> part answers your question. We do object to that.
>
> "THE COURT: Can you be more fact specific as to which comment
> you're referring to?
>
> "[Defense Counsel]: When the Court said this part answers your question;
> any part the Court added that was not part of the pattern charge, we do have
> an objection.
>
> "THE COURT: Noted."

Doc. 7-6 at 15 (quoting the trial transcript). The court then further instructed the jury,

saying among other things that it was not asking any juror to compromise but rather to

work together to try reach a verdict. Doc. 7-4 at 105–07. Outside the hearing of the jury,

defense counsel "object[ed] to the additional instruction of the jury to proceed forward

without any question or issue of that nature." Docs. 7-4 at 107 & 7-6 at 15 (quoting the

trial transcript).

L.K.L. argued on appeal that the trial court abused its discretion by giving additional

instructions beyond the approved pattern jury instructions, thereby prejudicing his right to

a fair and impartial trial. Doc. 7-5 at 25. The Court of Criminal Appeals observed that,

under state evidentiary law, the court may instruct a jury beyond the strict question of the

jury so long as the jury is not "misled to the prejudice of the accused." Doc. 7-6 at 15

(quoting *Collier v. State*, 611 So. 2d 498, 503 (Ala. Crim. App. 1993)). It further observed

that state procedural rules permit the court to allow testimony to be repeated or provide

other instructions so long as the court does not "give undue prominence to the particular testimony or instructions requested." Doc. 7-6 at 15–16 (quoting Ala. R. Crim. P. 22.2). The Court of Criminal Appeals rejected L.K.L.'s argument, holding that he made only "a bare allegation that the instructions were error without arguing how these instructions prejudiced him in any way." Doc. 7-6 at 16.

When a state court improperly instructs the jury under state law, the question on federal habeas review is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[T]he Due Process Clause requires the State in criminal prosecutions to prove guilt beyond a reasonable doubt." *Cupp*, 414 U.S. at 147. This court does not review the instruction in isolation but rather "in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (citing *Cupp*, 414 U.S. at 147).

Other than his conclusory argument, L.K.L. does not identify how the instructions rendered his trial fundamentally unfair. Doc. 1 at 22–24. The question on habeas review is not whether the trial court added unnecessary commentary or even whether it violated state law. Viewed in the context of the whole trial, the court's instructions did not relieve the State of its burden of persuasion on any element of the offense and did not "so infect[] the entire trial that the resulting conviction violate[d] due process." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). The state-court decision was not contrary to or an

unreasonable application of federal law as determined by the Supreme Court.[2] 28 U.S.C.

§ 2254(d). Therefore L.K.L. is not entitled to habeas relief on his claim regarding the jury

instructions.

L.K.L. asks for an evidentiary hearing. Doc. 1 at 36. No hearing is required because

"the record refutes the applicant's factual allegations or otherwise precludes habeas relief."

*See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an

evidentiary hearing, a federal court must consider whether such a hearing could enable an

applicant to prove the petition's factual allegations, which, if true, would entitle the

applicant to federal habeas relief.").

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the

petition for habeas corpus relief filed by Petitioner L.K.L., Jr., be DENIED and

DISMISSED with prejudice.

It is further ORDERED that on or before **December 28, 2018,** the parties may file

objections to the Recommendation. Any objections filed must specifically identify the

findings in the Magistrate Judge's Recommendation to which the party is objecting.

Frivolous, conclusive or general objections will not be considered by the District Court.

---

[2] Respondents argue L.K.L. did not raise a federal challenge to the jury instructions in state court. Doc. 7 at 10. In state court L.K.L. cited several federal cases, including *Schad v. Arizona*, 501 U.S. 624, 645 (1991), for the proposition that the instructions were inconsistent with the "fundamental fairness of criminal trials." Doc. 7-5 at 24 (quotation marks omitted) (citing *Schad*, 501 U.S. at 645). This court, therefore, treats his federal claim as preserved. To the extent L.K.L. did not present a federal claim in state court, he would be precluded by state procedural law from doing so now. *See Coleman*, 501 U.S. at 750. He does not attempt to overcome this procedural default. Nevertheless, this court may deny habeas relief to L.K.L. on the merits notwithstanding his failure to exhaust available state remedies. *See* 28 U.S.C. § 2254(b)(3).

The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE on the 10th day of December, 2018.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE